## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A COMPLAINT AND ARREST WARRANT

I, Jeffrey Buttolph, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent of the Department of Labor – Office of Inspector General. The information contained in the complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including business records, bank records, and other documents and records. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

2.      Based on the facts set forth in this affidavit, there is probable cause to believe that UNIQUE LOGAN has committed violations of Title 18, United States Code, Sections 1343 (Wire Fraud).

### PROBABLE CAUSE

#### *Background on Pertinent Entities and Individuals*

3.      At all times relevant to this Complaint, UNIQUE LOGAN was a resident of Maple Heights, Ohio, in the Northern District of Ohio.

4.      Bank 1 was a federally insured financial institution headquartered in Charlotte, North Carolina.

5.     Bank 2 was a federally insured financial institution headquartered in Cleveland, Ohio.

6.     The Social Security Act of 1935 initiated the federal and state unemployment insurance ("UI") system.  The UI system provided temporary financial assistance to eligible lawful workers who were unemployed through no fault of their own.  The purpose of the UI system was twofold: to lessen the effects of unemployment through direct cash payments to laid-off workers; and to ensure that life necessities were met weekly while the worker sought employment.

7.     State unemployment systems and benefits were joint federal and state enterprises administered by the State Workforce Agency ("SWA") of a given state and largely financed by taxes on private employers located in the state.  SWAs administered UI programs in accordance with federal laws and regulations.  Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits were paid.  Generally, UI weekly benefit amounts were based on a percentage of a lawful worker's earnings over a base period.  When state unemployment benefits were exhausted, the U.S. Department of Labor ("DOL") could supplement them with federal funds.

8.     In Maryland, the SWA was the Maryland Department of Labor, Division of Unemployment Insurance ("Maryland SWA").  In Indiana, the SWA was the Indiana Department of Workforce Development ("Indiana SWA").  In North Carolina, the SWA was the North Carolina Department of Commerce, Employment Security ("North Carolina SWA").  In California, the SWA was the Economic Development Department ("California SWA"). (Collectively, the "State SWAs.")

9.      Because of the COVID-19 pandemic, the State SWAs' ability to provide UI benefits were expanded.  On or about March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law.  The CARES Act expanded the States' SWAs' ability to provide UI for many workers impacted by COVID-19, including for workers who were not ordinarily eligible for UI benefits.  The CARES Act provided for new programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC"), among others (collectively, "Pandemic UI").

10.     PUA provided for up to 39 weeks of benefits to individuals who were self-employed, seeking part-time employment, or otherwise would not qualify for regular or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act.  Coverage included individuals who exhausted all rights to regular UI benefits or extended benefits under state or federal law or PEUC.  Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker qualified for PUA benefits administered by the State SWAs if the individual previously performed such work in a State and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.  The eligible timeframe to receive PUA was for weeks of unemployment beginning on or after January 27, 2020, through December 31, 2020.

11.     FPUC provided individuals who were collecting regular UI, PEUC, and PUA with an additional $600 per week from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

12.     PEUC provided for up to 13 weeks of benefits to individuals who had exhausted regular UI under state or federal law; had no rights to regular UI under any other state or federal

law; were not receiving UI under the UI laws of Canada; and were able to work, available for work, and actively seeking work. The State SWAs had to offer flexibility in meeting the actively seeking work requirement if individuals were unable to search for work because of COVID-19, for reasons including illness, quarantine, or movement restriction. The eligible timeframe to receive PEUC was from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

13.     To obtain Pandemic UI, an individual could apply online through the State SWAs' respective websites. Claimants answered various questions to establish their eligibility, including whether they had performed work in the state in which they were claiming Pandemic UI benefits. Claimants were required to provide personal identifying information, which included their name, mailing address, gender, email, phone number, social security number, and date of birth (collectively, "personal identification information"). Moreover, claimants had to identify a qualifying occupational status and COVID-19-related reason for being unemployed. Claimants could also submit several documents as evidence of their income.

14.     State SWAs specifically asked claimants if they are receiving UI benefits from other states on their applications. Claimants were prohibited from collecting UI benefits from more than one state at the same time.

15.     The State SWAs for California, Maryland, and North Carolina used Bank 1 to administer Pandemic UI benefits. The State SWA for Indiana used Bank 2 to administer Pandemic UI benefits. (Collectively "the Banks.") If a State SWA approved the claimant's application, the Banks mailed a preloaded debit card to the claimant at the mailing address identified by the claimant on their application. The Banks thereafter loaded benefits on the claimant's card at certain intervals.

### *The Scheme to Defraud*

16.     From in or around June 2020 through in or around April 2021, in the Northern District of Ohio, Eastern Division, and elsewhere, UNIQUE LOGAN knowingly devised, and intended to devise, a scheme and artifice to defraud the United States Department of Labor and the State SWAs, and to obtain Pandemic UI benefits, money, and property to which she was not entitled from United States Department of Labor and State SWAs by means of false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

### *Manner and Means of the Scheme*

17.     The manner and means by which LOGAN carried out the scheme included, but were not limited to, the following:

a.      LOGAN knowingly made and caused to be made materially false statements and omissions on Pandemic UI Benefits applications to State SWAs to appear to be eligible to receive Pandemic UI benefits, including false statements regarding employment history, residency and other information, and misrepresentations about who was receiving the benefits sought.

b.      LOGAN's materially false statements and omissions on the Pandemic UI benefits applications induced DOL and State SWAs to issue Pandemic UI benefits to which LOGAN and others were not entitled.

c.      Upon receiving the fraudulently-obtained Bank 1-issued debit cards from State SWAs, LOGAN made withdrawals via Bank 1 ATMs and retail purchases at multiple locations in the Northern District of Ohio using the State SWA debit cards, thereby obtaining Pandemic UI benefits she were not qualified or authorized to receive.

*Acts in Furtherance of the Scheme*

18.     The acts caused by LOGAN in furtherance of the scheme, in the Northern District of Ohio, Eastern Division, and elsewhere, included, but were not limited to, the following:

<u>*California SWA Application*</u>

19.     On or about July 19, 2020, LOGAN submitted and caused to be submitted to the California SWA an electronic application for Pandemic UI benefits in LOGAN's name. The application listed LOGAN's address in Maple Heights, Ohio; LOGAN's Ohio driver's license identification number; and an email address associated with LOGAN.  The information on the application concerning LOGAN's employment and eligibility to receive unemployment benefits from the California SWA was false.

20.     On or about August 9, 2020, LOGAN caused Bank 1 to send via regular U.S. mail to LOGAN's address in Maple Heights, Ohio, a Bank 1-issued debit card in the name of LOGAN, which was subsequently loaded with Pandemic UI benefits in the approximate amount of $1,950.  Additional benefits were loaded onto the card on subsequent dates. The total amount LOGAN caused to be loaded onto the card from the California SWA was approximately $27,750.

21.     From on or about September 19, 2020, to on or about December 21, 2020, LOGAN withdrew PUA funds at retailers and ATMs throughout the Northern District of Ohio using the Bank 1-issued debit card in the name of LOGAN, thereby obtaining California Pandemic UI benefits for which she was not eligible and to which she was not entitled, knowing the benefits were obtained under false pretenses.

<u>*Maryland SWA Application*</u>

22.     On or about August 30, 2020, LOGAN submitted and caused to be submitted to the Maryland SWA an electronic application for Pandemic UI benefits in the name of LOGAN.

The application listed LOGAN's address in Maple Heights, Ohio. LOGAN submitted

supporting documents for her claim, including copies of LOGAN's social security card, W-2,

Ohio driver's license, birth certificate, and a selfie of LOGAN. The information on LOGAN's

application concerning LOGAN's eligibility to receive unemployment benefits from the

Maryland SWA was false.

23. On or about September 12, 2020, LOGAN caused Bank 1 to send via regular U.S.

mail to LOGAN's address in Maple Heights, Ohio, a Bank 1-issued debit card in the name of

LOGAN, which was subsequently loaded with Pandemic UI benefits in the approximate amount

of $476. Additional benefits were loaded onto the card on subsequent dates. The total amount

LOGAN caused to be loaded onto the card from the Maryland SWA was approximately $18,524.

24. From on or about September 21, 2020, to on or about November 27, 2020,

LOGAN withdrew PUA funds from retailers and ATMs throughout the Northern District of

Ohio using the Bank 1-issued debit card in the name of LOGAN, thereby obtaining Maryland

Pandemic UI benefits for which she was not eligible and to which she was not entitled, knowing

the benefits were obtained under false pretenses.

### North Carolina SWA Application

25. On or about September 22, 2020, LOGAN and others submitted and caused to be

submitted to the North Carolina SWA an electronic application for Pandemic UI benefits in the

name of LOGAN. LOGAN's application listed LOGAN's address in Maple Heights, Ohio, and

an email associated with LOGAN. The information on LOGAN's application concerning

LOGAN's employment and eligibility to receive unemployment benefits from the North

Carolina SWA was false.

26. On or about September 28, 2020, LOGAN and others caused Bank 1 to send via

regular U.S. mail to LOGAN's address in Maple Heights, Ohio, a Bank 1-issued debit card in the

name of LOGAN, which was subsequently loaded with Pandemic UI benefits in the approximate amount of $2,460 on September 29, 2020. The total amount LOGAN caused to be loaded onto the card from the North Carolina SWA was approximately $16,224.

27.     From on or about November 7, 2020, to on or about December 5, 2020, LOGAN withdrew PUA funds from retailers and ATMs throughout the Northern District of Ohio using the Bank 1-issued debit card in the name of LOGAN, thereby obtaining North Carolina Pandemic UI benefits for which she was not eligible and to which she was not entitled, knowing the benefits were obtained under false pretenses.

### *Indiana SWA Application*

28.     On or about December 6, 2020, LOGAN submitted and caused to be submitted to the Indiana SWA an electronic application for Pandemic UI benefits in the name of LOGAN. The application listed LOGAN's address in Maple Heights, Ohio, and an email address associated with LOGAN.  The information on LOGAN's application concerning LOGAN's employment and eligibility to receive unemployment benefits from the Indiana SWA was false.

29.     On or about December 10, 2020, LOGAN caused Bank 2 to send via regular U.S. mail to LOGAN's address in Maple Heights, Ohio, a Bank 2-issued debit card in the name of LOGAN, which was subsequently loaded with Pandemic UI benefits in the approximate amount of $2,070.  Additional benefits were loaded onto the card on subsequent dates.  The total amount LOGAN caused to be loaded onto the card from the Indiana SWA was approximately $7,680.

30.     From on or about January 13, 2021, to on or about April 12, 2021, LOGAN withdrew PUA funds from ATMs throughout the Northern District of Ohio using the Bank 2-issued debit card in the name of LOGAN, thereby obtaining Indiana Pandemic UI benefits for which she was not eligible and to which she was not entitled, knowing the benefits were obtained under false pretenses.

## CONCLUSION

19.     Based on the foregoing, I respectfully submit that there is probable cause to

believe that UNIQUE LOGAN committed wire fraud from on or about July 19, 2020, to at least

on or about April 12, 2021, in the Northern District of Ohio, and elsewhere.

Jeffrey Buttolph
Special Agent
United States Department of Labor –
Office of Inspector General

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per
Fed. R. Crim P. 4.1, 41(d)(3) on this _4th_ day of April, 2024 at 4:15 p.m.

Jennifer Dowdell Armstrong
United States Magistrate Judge